**CITY OF PASADENA, Appellant,**

v.

**Roland C. KUHN, Appellee.**

No. 01–07–00812–CV.

Court of Appeals of Texas,
Houston (1st Dist.).

May 29, 2008.

Richard Risinger, Deputy City Attorney, Pasadena, TX, for Appellant.

Stephen T. Liss, Houston, TX, for Appellee.

Panel consists of Justices TAFT, KEYES, and ALCALA.

## OPINION

EVELYN V. KEYES, Justice.

Appellant, the City of Pasadena (the "City"), challenges the trial court's order

that denied its plea to the jurisdiction in favor of appellee, Roland C. Kuhn. In one issue on appeal, the City argues that the trial court erred in denying its plea to the jurisdiction.

We reverse and render.

## Background

On March 22, 2004, Kuhn's vehicle collided with Officer Michael F. Matela of the Pasadena Police Department, who was driving an emergency vehicle to a house fire. Kuhn filed suit against the City and Officer Matela. The City answered and filed a plea to the jurisdiction. Kuhn filed an amended petition and a response to the plea to the jurisdiction. After a hearing, the trial court denied the City's plea to the jurisdiction and dismissed Officer Matela from the proceedings.

## Plea to the Jurisdiction

A plea to the jurisdiction challenges the trial court's authority to determine the subject matter of the action. *See Tex. Dep't of Transp. v. Jones,* 8 S.W.3d 636, 638 (Tex.1999). The standard of review of an order granting a plea to the jurisdiction based on governmental immunity is de novo. *Tex. Natural Res. Conservation Comm'n v. IT–Davy,* 74 S.W.3d 849, 855 (Tex.2002); *Mayhew v. Town of Sunnyvale,* 964 S.W.2d 922, 928 (Tex. 1998). It is the plaintiff's burden to allege facts that affirmatively establish the trial court's subject matter jurisdiction. *See Tex. Ass'n of Bus. v. Tex. Air Control Bd.,* 852 S.W.2d 440, 446 (Tex.1993). In determining whether the plaintiff has met this burden, we look to the allegations in the plaintiff's pleadings, accept them as true, and construe them in favor of the plaintiff. *See Tex. Dep't of Parks & Wildlife v. Miranda,* 133 S.W.3d 217, 226 (Tex.2004). While we must construe the allegations in favor of the plaintiff, we are not bound by

legal conclusions. *Tex. Natural Res. & Conservation Comm'n v. White,* 13 S.W.3d 819, 822 (Tex.App.–Fort Worth 2000), *rev'd on other grounds,* 46 S.W.3d 864 (Tex. 2001); *Tex. Parks & Wildlife Dep't v. Garrett Place, Inc.,* 972 S.W.2d 140, 143 (Tex. App.–Dallas 1998, no pet.); *Salazar v. Morales,* 900 S.W.2d 929, 932 (Tex.App.– Austin 1995, no pet.). When deciding a plea to the jurisdiction, we must consider evidence "when necessary to resolve the jurisdictional issues raised." *Bland Indep. Sch. Dist. v. Blue,* 34 S.W.3d 547, 555 (Tex.2000).

The Texas Supreme Court has explained the approach to be taken when a governmental entity challenges the jurisdictional facts and the scope of that entity's burden:

> Then, in a case in which the jurisdictional challenge implicates the merits of the plaintiffs' cause of action and the plea to the jurisdiction includes evidence, the trial court reviews the relevant evidence to determine if a fact issue exists. The United States Supreme Court and all of the federal circuits have authorized federal district courts to consider evidence in deciding motions to dismiss for lack of subject matter jurisdiction. If the evidence creates a fact question regarding the jurisdictional issue, then the trial court cannot grant the plea to the jurisdiction, and the fact issue will be resolved by the fact finder. However, if the relevant evidence is undisputed or fails to raise a fact question on the jurisdictional issue, the trial court rules on the plea to the jurisdiction as a matter of law.

*Miranda,* 133 S.W.3d at 227–28 (internal citations omitted). The supreme court then stated, "We acknowledge that this standard generally mirrors that of a summary judgment under Texas Rule of Civil Procedure 166a(c)." *Id.* at 228. The Tex-

as Supreme Court recognized that the procedure in such situations parallels summary judgment practice. *Id.* The court explained, "By requiring the [governmental entity] to meet the summary judgment standard of proof in cases like this one, we protect the plaintiffs from having to put on their case simply to establish jurisdiction." *Id.* If there is no fact question on the jurisdiction issue, the trial court will rule on the plea to the jurisdiction as a matter of law. *Id.* at 227–28. Likewise, reviewing jurisdictional determinations may require appellate courts to examine the evidence supporting a claim in the same de novo manner it reviews a summary judgment. *Id.* at 228.

## Governmental Immunity

In its sole issue, the City asserts that Kuhn's suit is barred by the principle of governmental immunity and that Kuhn has not pleaded sufficient facts to overcome this immunity.

Governmental immunity protects political subdivisions of the State from suit, unless immunity from suit has been waived. *See Gen. Servs. Comm'n v. Little–Tex Insulation Co.*, 39 S.W.3d 591, 594 (Tex.2001). Governmental immunity inures to the benefit of a municipality insofar as the municipality engages in the exercise of governmental functions, except when that immunity has been waived. *Fort Worth Indep. Sch. Dist. v. City of Fort Worth*, 22 S.W.3d 831, 840 (Tex.2000).

Governmental immunity from suit defeats a trial court's subject-matter jurisdiction and is properly asserted in a plea to the jurisdiction. *Tex. Dep't of Transp. v. Jones*, 8 S.W.3d 636, 638 (Tex. 1999). Generally, a party suing a governmental entity must establish consent to sue, which may be alleged by reference either to a statute or to express legislative permission. *See Mo. Pac. R.R. Co. v. Brownsville Navigation Dist.*, 453 S.W.2d 812, 814 (Tex.1970). The Texas Tort Claims Act (the "Act") waives immunity from liability and suit in a number of circumstances. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 101.021–.025 (Vernon 2005). However, the Act also includes a subchapter entitled "Exceptions and Exclusions" listing circumstances in which its waiver provisions do not apply. *See id.* §§ 101.051–.066.

Kuhn's original petition alleged that the City and Officer Matela were liable pursuant to section 101.021 of the Act, which provides that a governmental unit is liable for personal injury arising from the operation of a motor vehicle that is proximately caused by the wrongful act of an employee acting within the scope of his employment.[1] *See* TEX. CIV. PRAC. & REM.CODE ANN. § 101.021 (Vernon 2005). Kuhn alleged that the City and Officer Matela waived their immunity pursuant to section 101.025 of the Act, which provides that a governmental unit may be sued for damages allowed by the Act.[2] *See id.* § 101.025

1. Section 101.021 provides, in relevant part, A governmental unit in the state is liable for:
   (1) property damage, personal injury, and death proximately caused by the wrongful act or omission or the negligence of an employee acting within his scope of employment if:
   (A) the property damage, personal injury, or death arises from the operation or use

of a motor-driven vehicle or motor-driven equipment.
TEX. CIV. PRAC. & REM.CODE ANN. § 101.021(1)(A) (Vernon 2005).

2. Section 101.025 provides,
   (a) Sovereign immunity to suit is waived and abolished to the extent of liability created by this chapter.

(Vernon 2005). However, an exception in section 101.055(2) of the Act governs emergency situations:

> This chapter does not apply to a claim arising ... from the action of an employee while responding to an emergency call or reacting to an emergency situation if the action is in compliance with the laws and ordinances applicable to emergency action, or in the absence of such a law or ordinance, *if the action is not taken with conscious indifference or reckless disregard for the safety of others* ....

*Id.* § 101.055(2) (Vernon 2005) (emphasis added). Finally, section 545.156 of the Transportation Code provides that, on the immediate approach of an emergency vehicle using audible and visual signals, an operator, unless otherwise directed by a police officer, shall yield the right-of-way, immediately pull over to the of the roadway clear of any intersection, and stop and remain standing until the emergency vehicle has passed.[3] *See* TEX. TRANSP. CODE ANN. § 545.156 (Vernon 1999).

In his amended petition, Kuhn alleged,

> [T]he actions of Officer Matela [were] reckless. The act of entering a blind intersection at a high enough rate of

speed to be unable to stop his vehicle or avoid an accident with [Kuhn's] vehicle carries a high degree of risk of serious injury. These facts are bolstered by the outcome of this accident. [Kuhn] suffered severe and permanent injury requiring at least one surgery. Said acts are in direct violations of Transportation Code [section] 545.156(b) in that the officer failed to give due regard for the safety of [Kuhn]. These actions were a proximate cause of the damages suffered by [Kuhn].

■ The City's plea to the jurisdiction argued that the City maintained its immunity from suit because Kuhn did not plead or prove that Officer Matela's actions were reckless.[4] In his response to the City's plea, Kuhn attached photographic evidence to show that the intersection where the accident occurred was "blind" from Officer Matela's and Kuhn's standpoint. Kuhn stated, "There is a hedge row, a building, a marquee, as well as parked cars in the lot on the corner. As the series [of pictures] progress, it becomes clear that the cross street is blind until just before the intersection." Kuhn argued, "Obviously when an emergency ve-

---

(b) A person having a claim under this chapter may sue a governmental unit for damages allowed by this chapter.
*Id.* § 101.025 (Vernon 2005).

3. Section 545.156 provides,
   (a) On the immediate approach of an authorized emergency vehicle using audible and visual signals that meet the requirements of Sections 547.305 and 547.702, or of a police vehicle lawfully using only an audible signal, an operator, unless otherwise directed by a police officer, shall:
   (1) yield the right-of-way;
   (2) immediately drive to a position parallel to and as close as possible to the right-hand edge or curb of the roadway clear of any intersection; and

   (3) stop and remain standing until the authorized emergency vehicle has passed.
   (b) This section does not exempt the operator of an authorized emergency vehicle from the duty to drive with due regard for the safety of all persons using the highway.
   TEX. TRANSP. CODE ANN. § 545.156 (Vernon 1999).

4. The City did not attach any evidence to its plea to the jurisdiction. However, the parties entered into a Rule 11 agreement that detailed the evidence in the record for the trial court's consideration in ruling on the plea. Thus, we disagree with Kuhn's statement on appeal that "[t]here is no evidence for this court to review in support of the Appellant's position."

hicle proceeds through an intersection on a red light, there is the potential for a collision with a vehicle crossing the intersection on the green light." He stated,

A police officer responding to an emergency at a rate of speed of at least 40 miles per hour, attempting to cross an intersection on a red light either knows, or certainly should know of the high degree of risk of serious injury if he has an accident with a vehicle traveling across his path at 40 miles per hour. This is especially true on a blind intersection.

Kuhn's response also emphasized that the intersection was not a "right angle" intersection, and, therefore, "The configuration of this intersection is dangerous and certainly dangerous to enter through a red light at a high rate of speed."

Kuhn also argued that, because Officer Matela claimed that he slowed and stopped before entering the intersection, he must have been reckless because "[i]f the officer stopped his vehicle and then accelerated to a speed capable of causing the damage as indicated in the photographs and as listed on the accident report, then he must have accelerated at a very reckless rate into a blind intersection." Kuhn pointed out that Officer Matela's speed at the intersection was unclear because Officer Matela's statement conflicted with a witness's statement that Officer Matela merely slowed down. From this, Kuhn argued, "We know he was traveling with lights and siren so it is easy to conclude he was traveling faster than the posted 40 miles per hour speed limit on Red Bluff." In response to the City's plea to the jurisdiction, Kuhn concluded, "Certainly, the rate of speed and configuration of the intersection can lead a reasonably minded fact finder to conclude, from the minimum evidence that we have at this point, that the Officer may have

been acting without due regard to the safety of the Plaintiff."

Kuhn also included an affidavit in which he stated,

I was traveling east bound on Spencer Highway on my way through the intersection of Red Bluff and Spencer Highway. As I approached the intersection, I noted that I had the green light. Nothing looked out of place. There were no cars stopped ahead of me except for those that were going to make a left turn on to Red Bluff. You cannot see the south bound lane of Red Bluff from my direction. It is blocked by a hedge row, a store and a parking lot. There were also several cars waiting to turn left onto Red Bluff, further blocking my view of Red Bluff. The road is at a weird ang[le] to Spencer Highway. It runs at about a 45 degree ang[le] from the left of Spencer Highway east bound. I did not hear any emergency vehicles as I approached the intersection.

I was struck by Officer Matela's patrol car on the left side of my truck and spun around violently. His car struck me, I did not strike him. There was no damage to the front of my vehicle. It was a very hard impact. It seemed to me like he was traveling at a very high rate of speed. I never saw him coming.

Other evidence in the record included an accident report which indicated that Officer Matela entered the intersection on a red light. Kim Hickmas, a witness to the accident, stated that the police officer was coming down Red Bluff with lights and sirens activated. Another witness, Teri Peterson, stated that Officer Matela entered the intersection with his lights and siren on and that he slowed down before he entered the intersection. A document from the Pasadena Police Officer Department, signed by the Chief of Police,

showed that it concluded that "Policies and Procedures" were followed in the accident and that no further action was to be taken. The Accident Review Board also found that Officer Matela followed departmental policies and procedures.

Sergeant R.G. Johnston stated that Officer Matela said that he was using

emergency equipment while enroute to a house fire at 7100 Sprague. He further stated that he was southbound in the middle lane of 5500 Red Bluff and as he approached the intersection he slowed down then stopped because it was a red signal light. He also stated that he then proceeded through the intersection and struck Mr. Kuhn's vehicle.

Officer G.D. Dosckocil stated,

Officer Matela had all the unit's emergency equipment activated prior to approaching the intersection of Red Bluff @ Spencer. Officer Matela slowed his unit upon approach to the intersection. He checked to make sure the visible traffic had responded to his emergency equipment and yielded. He proceeded into the intersection on a red light, as he crossed the eastbound lanes of Spencer a white 1999 Ford Explorer failed to yield and crossed the intersection in front of the unit.

Officer Matela stated,

I was responding to a house fire at 7106 Sprague. I was driving my take home patrol unit # 307 southbound (middle lane) on Red Bluff approaching the intersection of 5400 Red Bluff @ 6800 Spencer with my emergency equipment (lights/siren) activated. I slowed and stopped in the middle of the intersection and looked both ways (east/west) for vehicle traffic.[5] Traffic was stopped and

appeared to be clear when I proceeded through the intersection. I was then struck in the intersection by a white, 1999, Ford Explorer ... that was traveling eastbound on Spencer.

In determining whether Kuhn pled a proper waiver of immunity, we analyze whether Kuhn alleged and presented evidence that Officer Matela acted in "conscious indifference" to or "reckless disregard" for the safety of others. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 101.055(2). Because these terms are not defined in the statute, we give each its ordinary meaning. TEX. GOV'T CODE ANN. § 312.002 (Vernon 2005); *City of San Antonio v. Hartman,* 201 S.W.3d 667, 672 n. 19 (Tex.2006); *Pakdimounivong v. City of Arlington,* 219 S.W.3d 401, 411 (Tex.App.–Fort Worth 2006, pet. denied). The supreme court has stated that the "reckless disregard" test "requires a showing of more than a momentary judgment lapse" and that "[t]o recover damages resulting from the emergency operation of an emergency vehicle, a plaintiff must show that the operator has committed an act that the operator knew or should have known posed a high degree of risk of serious injury." *City of Amarillo v. Martin,* 971 S.W.2d 426, 429–30 (Tex. 1998). More recently, the Texas Supreme Court has stated that the terms "conscious indifference" and "reckless disregard" "require proof that a party knew the relevant facts but did not care about the result." *Hartman,* 201 S.W.3d at 672 n. 19.

The undisputed evidence shows that Officer Matela was responding to a house fire, an emergency condition. Before entering the intersection of Red Bluff and Spencer, Officer Matela had activated his emergency lights and siren. The undisputed evidence further shows that Officer Matela slowed down before proceeding

---

**5.** Section 546.001 provides that when operating an authorized emergency vehicle, the operator "may proceed past a red or stop signal or stop sign, after slowing as necessary for safe operation." TEX. TRANSP. CODE ANN. § 546.001(2) (Vernon 1999).

through the intersection.[6] After slowing down to make certain it was safe, Officer Matela attempted to cross the intersection and collided with Kuhn. Other courts have determined that evidence of the type presented here is insufficient to show reckless conduct as a matter of law. *See Pakdimounivong,* 219 S.W.3d at 411–12 (holding that officers' actions were not taken with conscious indifference or reckless disregard for safety of deceased when no evidence showed that officers did not care what happened to deceased); *Smith v. Janda,* 126 S.W.3d 543, 545–46 (Tex.App.–San Antonio 2003, no pet.) (holding that evidence insufficient to establish recklessness when ambulance driven to emergency with lights and sirens activated as it approached intersection, other drivers at intersection could hear and see sirens and lights, ambulance driver slowed down and looked around and then proceeded into intersection without coming to complete stop); *City of San Angelo Fire Dept. v. Hudson,* 179 S.W.3d 695, 701–02 (Tex. App.–Austin 2005, no pet.) (holding no evidence of reckless disregard for safety of others when officer entered intersection without stopping and witness did not hear brakes being applied). We agree with the City that Kuhn's allegations and evidence, which is similar to the evidence presented in *Pakdimounivong, Smith,* and *Hudson,*

do not show that Officer Matela's actions were taken with conscious indifference or reckless disregard for the safety of Kuhn.

■ Because the City showed that the trial court lacked subject matter jurisdiction, the burden shifted to Kuhn to show a disputed material fact. *See Miranda,* 133 S.W.3d at 227–28. Kuhn alleged that Officer Matela was reckless for entering a "blind" intersection. Specifically, on appeal, Kuhn states, "There is a hedge row, a building, a marquee, as well as parked cars in the lot on the corner" that would preclude Officer Matela or Kuhn from seeing any approaching vehicles "until just before the intersection." Whether the intersection is blind does not create a material fact issue here in light of the undisputed testimony that Officer Matela had on his emergency lights and siren and that he slowed before entering the intersection. Any intersection that an officer attempts to traverse when responding to an emergency is potentially a "blind intersection." That is why the statute provides that an emergency vehicle may proceed through a stop light after "slowing as necessary." *See* Tex. Transp. Code Ann. § 546.001(2). The undisputed evidence shows that Officer Matela followed those procedures.[7]

■ Kuhn also argued that the impact showed that Officer Matela was reckless.

6. Some evidence suggested that Officer Matela actually stopped before proceeding through the intersection. Whether he stopped or slowed makes no difference. Officer Matela was only required to slow as necessary for safe operation. *See* Tex. Transp. Code Ann. § 546.001(2).

7. "The Legislature has determined that the public good will be better served by encouraging public employees to take immediate action in emergency situations, rather than by suing them later if their actions were imprudent." *City of San Antonio v. Hartman,* 201 S.W.3d 667, 673 (Tex.2006). The supreme court has noted the double standard for liability between emergency vehicle operators and

civilian drivers with the heavier burden on civilian drivers. *City of Amarillo v. Martin,* 971 S.W.2d 426, 431 (Tex.1998). The policy considerations for the heavier burden are:

> First, emergency vehicle operators typically face more exigent circumstances than do civilian drivers. Emergency vehicle operators are charged with protecting the public's health, safety, and property, and a few minutes or even seconds can make the difference between life and death.
> Second, civilian drivers generally have an advantage when it comes to anticipating and preventing a collision. Under most circumstances, the lights, sirens, and distinctive coloring of an emergency vehicle

However, neither the fact that Kuhn's vehicle sustained damage nor the fact that Kuhn was injured raises a fact issue as to whether Officer Matela lacked regard for the safety of others. *See Hudson,* 179 S.W.3d at 702 (holding that conclusory observation that "large pumper truck 'slammed' into ... car 'full force' does not provide evidence raising a fact issue about [officer's] regard for the safety of others or whether he slowed as necessary."). Kuhn also argues that Officer Matela was reckless because he was driving at a high rate of speed. No evidence supports Kuhn's conclusion, and we note that the trial court sustained the City's objections to the evidence regarding Officer Matela's rate of speed. Other than Kuhn's conclusory statements that Officer Matela was driving at a high rate of speed, no proper evidence established Officer's Matela's rate of speed in relation to the damage sustained by the two vehicles.

Accordingly, we hold that Kuhn has not demonstrated a material fact issue regarding the jurisdictional issue. We therefore conclude that the City retains its immunity as a matter of law.

We sustain the City's sole issue.

### Conclusion

We reverse the order of the trial court that denied the City's plea to the jurisdiction and render judgment that the case be dismissed.

make it stand out from the others; by contrast, the vehicle with which the emergency vehicle is on course to collide too easily blends in with the other traffic....
Third, emergency vehicle operators must routinely make risky judgment calls in emergency situations. It is unfortunate that some civilian drivers are less than vigilant in abiding by their duties to keep a lookout for and to yield to emergency vehicles, but emergency vehicle operators are entitled to presume that other drivers will respect emergency priorities.
*Martin,* 971 S.W.2d at 431–32.