NUMBERS

 13-10-00401-CV

13-10-00402-CV

 

COURT OF APPEALS

 

THIRTEENTH DISTRICT
OF TEXAS

 

CORPUS CHRISTI – EDINBURG

                                                                                                                             

 

TEXAS DEPARTMENT OF                                                                    Appellant,

PUBLIC SAFETY,                                                                          

 

v.

 

ROBERT A. SPARKS,                                                                            
Appellee.

                                                                                                                             

 

On appeal from the
267th District
Court

of Victoria County, Texas.

                                                                                                                             

 

OPINION

 

Before Justices Garza,
Benavides and Vela 

Memorandum Opinion by
Justice Garza 

 

            Appellant, the Texas
Department of Public Safety (“DPS”), brings this interlocutory appeal from the
trial court’s orders denying its plea to the jurisdiction and motion for
summary judgment.[1] 
We reverse and render judgment dismissing the claims against DPS for lack of
subject matter jurisdiction.

I. 
Background

            On the afternoon of April
7, 2004, DPS Troopers Shawn Hallett and Corey Lee responded to a radio alert
that Trooper Cole Dunaway was pursuing a motorcycle that had been speeding and
was driving recklessly in Victoria, Texas.  With emergency lights and siren
activated, Hallett and Lee joined the pursuit and eventually took the lead. 
Attempting to prevent the motorcycle from turning toward a school zone,
Hallett, who was driving, entered an intersection against a red light and
collided with a van driven by appellee, Robert Sparks.  

            Sparks sued DPS for
damages arising from the negligent operation of a motor vehicle under the Texas
Tort Claims Act (“the Act”).  See Tex.
Civ. Prac. & Rem. Code Ann. §§ 101.001–.109 (West 2011).  DPS
answered and filed a plea to the jurisdiction and motion for summary judgment,
in which it argued:  (1) the affirmative defense of sovereign immunity arising
from the official immunity of Hallett; (2) that the Act’s limited waiver of
sovereign immunity does not apply to Sparks’s claim because Hallett was
responding to an emergency at the time of the accident, see id. § 101.055(2); and (3) there is no
evidence that Hallett proximately caused the accident.[2] 
Sparks filed responses to the plea to the jurisdiction and motion.  Following a
hearing on June 14, 2010, the trial court denied DPS’s plea and motion.  This
appeal followed.  

II. 
Standards of Review and Applicable Law

A.  Plea to the
Jurisdiction

            A plea to
the jurisdiction is a dilatory plea; its purpose is “to defeat a cause of
action without regard to whether the claims asserted have merit.”  Bland
Indep. Sch. Dist. v. Blue, 34 S.W.3d 547, 554 (Tex. 2000).  The plea
challenges the trial court's jurisdiction over the subject matter of a pleaded
cause of action.  Tex. Dep't of Parks & Wildlife v. Miranda, 133
S.W.3d 217, 226 (Tex. 2004); Tex. Parks & Wildlife Dep't v. Morris,
129 S.W.3d 804, 807 (Tex. App.—Corpus Christi 2004, no pet.).  Subject matter
jurisdiction is a question of law; therefore, an appellate court reviews de
novo a trial court's ruling on a plea to the jurisdiction.  Miranda, 133
S.W.3d at 226; Morris, 129 S.W.3d at 807.

            Because
immunity from suit defeats a trial court's subject-matter jurisdiction, it may
be properly asserted in a jurisdictional plea.  Miranda, 133 S.W.3d at
225-26.  In a suit against a governmental unit, the plaintiff must
affirmatively demonstrate the court's jurisdiction by alleging a valid waiver
of immunity.  Dallas Area Rapid Transit v. Whitley, 104 S.W.3d 540, 542
(Tex. 2003).  We assume the truth of the jurisdictional facts alleged in the
pleadings unless the defendant presents evidence to negate their existence.  Miranda,
133 S.W.3d at 226–27.  If a plea to the jurisdiction challenges the
jurisdictional facts, we consider relevant evidence submitted by the parties to
resolve the jurisdictional issues raised.  City of Waco v. Kirwan, 298
S.W.3d 618, 622 (Tex. 2008) (citing Miranda, 133 S.W.3d at 227); see
Bland Indep. Sch. Dist., 34 S.W.3d at 555.  If that evidence creates a fact
issue as to jurisdiction, then it is for the fact-finder to decide.  City of
Waco, 298 S.W.3d at 622; Miranda, 133 S.W.3d at 227-28.  “However,
if the relevant evidence is undisputed or fails to raise a fact question on the
jurisdictional issue, the trial court rules on the plea to the jurisdiction as
a matter of law.”  Miranda, 133 S.W.3d at 228.  After the defendant “asserts
and supports with evidence that the trial court lacks subject matter jurisdiction,
we simply require the plaintiffs, when the facts underlying the merits and
subject matter jurisdiction are intertwined, to show that there is a disputed
material fact regarding the jurisdictional issue.”  Id.  This standard
“generally mirrors” that of a traditional motion for summary judgment.  Id.
 When reviewing a plea to the jurisdiction in which the pleading requirement
has been met and evidence has been submitted to support the plea that implicates
the merits of the case, we take as true all evidence favorable to the
non-movant.  Id.; see County of Cameron v. Brown, 80 S.W.3d 549,
555 (Tex. 2002).  We do not “weigh the claims’ merits but must consider only
the plaintiffs’ pleadings and the evidence pertinent to the jurisdictional
inquiry.”  Brown, 80 S.W.3d at 555.

B.  Emergency
Exception

            The Texas Tort Claims
Act waives immunity from liability and suit in a number of circumstances.  Pakdimounivong v. City of Arlington, 219 S.W.3d 401, 410 (Tex. App. —Fort Worth 2006, pet. denied).  But the Act includes
a subchapter entitled “Exclusions and Exceptions,” listing circumstances in
which its waiver-of-immunity provisions do not apply.  Id. (citing Tex. Civ. Prac. & Rem. Code Ann. §§ 101.051–067 (West
2011); City of San Antonio v. Hartman, 201 S.W.3d 667, 672–73 (Tex.
2006)).  Among those is section 101.055(2),
which governs emergency situations:

This chapter [Texas Tort Claims Act]
does not apply to a claim arising:

 

. . . .

 

(2)       from the action of an
employee while responding to an emergency call or reacting to an emergency
situation if the action is in compliance with the laws and ordinances
applicable to emergency action, or in the absence of such a law or ordinance,
if the action is not taken with conscious indifference or reckless disregard
for the safety of others . . . .

 

Tex.
Civ. Prac. & Rem. Code Ann. § 101.055(2) (West 2011).

            The law
applicable to emergency action in this context is section 546.005 of the Texas
Transportation Code, which provides that the driver of an emergency vehicle
must drive “with appropriate regard for the safety of all persons,” and he is
not relieved of “the consequences of reckless disregard for the safety of
others.”  Tex. Transp. Code Ann.
§ 546.005 (West 1999).  The Texas Supreme Court held that this provision “imposes
a duty to drive with due regard for others by avoiding negligent
behavior, but it only imposes liability for reckless conduct.”  City
of Amarillo v. Martin, 971 S.W.2d 426, 431 (Tex. 1998) (interpreting the
uncodified predecessor of section 546.005).  

The supreme court has stated that the
“reckless disregard” test “requires a showing of more than a momentary judgment
lapse” and that “[t]o recover damages resulting from the emergency operation of
an emergency vehicle, a plaintiff must show that the operator has committed an
act that the operator knew or should have known posed a high degree of risk of
serious injury.”  City of Amarillo v. Martin, 971 S.W.2d 426, 429–30
(Tex. 1998).  More recently, the Texas Supreme Court has stated that the terms
“conscious indifference” and “reckless disregard” “require proof that a party
knew the relevant facts but did not care about the result.”  [City of San
Antonio v.] Hartman, 201 S.W.3d [667], 672 n.19 [(Tex. 2006)].

 

City of Pasadena v.
Kuhn,
260 S.W.3d 93, 99 (Tex. App.—Houston [1st Dist.] 2008, no pet.).  “Thus, a
governmental entity is immune from suits to recover damages resulting from the
emergency operation of an emergency vehicle unless the operator acted
recklessly; that is, ‘committed an act that the operator knew or should have
known posed a high degree of risk of serious injury.’”  Smith v. Janda,
126 S.W.3d 543, 545 (Tex. App.—San Antonio 2003, no pet.) (quoting Martin,
971 S.W.2d at 430).

            The
transportation code provides that, in operating an authorized emergency
vehicle, a state employee may proceed past a red light after slowing as
necessary for safe operation.  Tex.
Transp. Code Ann. § 546.001(2) (West 1999).  Moreover, the operator must
use, at his discretion and in compliance with local government or department
policy, appropriate audible or visual signals.  Id. § 546.003.

            In
addition, section 545.156 of the transportation code provides that, on the
immediate approach of a police vehicle using an audible signal, an operator,
unless otherwise directed by a police officer, shall yield the right-of-way,
immediately pull over to the right-hand curb of the roadway clear of any
intersection, and stop until the emergency or police vehicle has passed.  See
id.  § 545.156.  

III.  Discussion

            In its
plea to the jurisdiction, DPS asserted that it retained its sovereign immunity
pursuant to the “emergency exception” to the Texas Tort Claims Act.  See Tex. Civ. Prac. & Rem. Code Ann. §
101.055(2).  Evidence submitted by DPS included:  (1) DPS’s accident report and
other related documents, including Hallett’s report to his then-supervisor,
Sergeant Glen Garrett, and another report to Garrett submitted by Trooper Jason
Price; (2) Hallett’s affidavit; (3) Trooper Lee’s affidavit; (4) Trooper Pete
Amador’s affidavit; (5) Trooper Price’s affidavit; (6) Trooper Ruben Garcia’s
affidavit; (7) the hand-written statement of Maria Sparks[3];
(8) excerpts from Hallett’s deposition testimony; (9) excerpts from Lee’s
deposition testimony; (10) Trooper Dunaway’s offense report; (11) excerpts from
Dunaway’s deposition testimony; (12) a DVD of the pursuit taken from Dunaway’s
vehicle; (13) a “station activity log” of the pursuit; (14) deposition
testimony of Adrienne Phipps, the dispatcher during the pursuit; and (15)
excerpts from the deposition testimony of Alan H. Baxter, a forensic analyst
who testified as an expert witness for Sparks.  

            Sparks
filed a response[4]
in which he argued, among other things, that “Trooper Hallett violated multiple
laws that applied to his alleged emergency response” and “acted with reckless
disregard for the safety of others.”  Specifically, he points to:  (1)
testimony by Trooper Price that Hallett violated section 546.001 of the transportation
code, see Tex. Transp. Code Ann. §
546.001(2) (authorizing emergency vehicles to proceed past a red light after
slowing as necessary for safe operation); (2) testimony by Sergeant Garrett
that Hallett should not have entered the intersection until it was apparent
that all drivers had yielded the right-of-way; and (3) deposition testimony by
Baxter that Hallett acted with reckless disregard and conscious indifference by
entering the intersection against the light. 

            We
summarize below the evidence relevant to DPS’s plea to the jurisdiction
argument that it retained its immunity pursuant to the “emergency exception” to
the Act. 

A.  DPS’s Evidence

1.  Trooper Hallett

            In his report to
Sergeant Garrett and in his affidavit,[5]
Hallett stated that his vehicle took the lead in pursuing the motorcycle when
Trooper Dunaway was blocked by a large truck.  Hallett stated that as the
motorcycle entered the intersection, he “checked traffic to the left, right and
across the intersection.”  Trooper Lee, seated in the front passenger seat,
reported that traffic was “clear to the right.”  Hallett stated that he “slowed
almost to a stop before entering the intersection.”  Hallett “eased [his] way
forward” in an attempt to prevent the motorcycle from heading toward a school
zone.  As Hallett entered the intersection with his emergency lights and siren
activated, he was hit by Sparks’s vehicle.  According to Hallett, when they
approached Sparks’s vehicle to determine if anyone was injured, Sparks stated
that “he saw us and the motorcycle but he could not react.”  

            In his
deposition, Hallett testified that as he approached the intersection, because
there was a vehicle blocking the center left-turn lane, he moved to the left,
into the lane facing oncoming traffic.  Hallett stated that the light was red,
and that he looked “left and right and across” before entering the
intersection.  Hallett stated that his speed was “low” when he entered the
intersection because “we came very close to a stop before that intersection.”  

2.  Trooper Lee 

            In his affidavit,
Trooper Lee stated that he activated the emergency lights and siren on the
patrol vehicle when he and Hallett joined the pursuit.  Lee was riding in the
front passenger seat.  Lee stated that when they approached the intersection,
“Hallett stopped at the intersection and looked left.”  Lee checked to the
right and told Hallett that it was clear.  As Hallett slowly entered the
intersection, they were struck by Sparks’s vehicle.  

            Similarly,
in his deposition testimony,[6]
Lee stated that he saw Hallett look to the left, but cannot say whether Hallett
looked to the left a second time.  In Lee’s opinion, Hallett entered the
intersection with “due caution,” even if he looked to the left only once, not
twice.  

3.  Trooper Dunaway

            In his deposition,
Trooper Dunaway testified that his pursuit of the motorcycle was video-recorded
by the camera in his patrol vehicle.[7] 
As the vehicles approached the intersection, Dunaway’s vehicle was in the
right-hand lane next to the curb.  Although the video shows Hallett’s vehicle
as it approached the intersection, it does not show the collision because it
occurred outside the camera’s visual field.  Dunaway stated that Hallett’s
vehicle slowed down at the intersection and that Hallett entered the
intersection “[c]autiously.”  After the collision occurred, Lee signaled to
Dunaway that Dunaway should continue the pursuit.  The pursuit continued for
another three minutes or so; the motorcyclist was then apprehended and
arrested.  

B.  Sparks’s Evidence

            In his response,
Sparks argued that DPS is not entitled to retain its immunity pursuant to the
emergency exception because Hallett violated various laws applicable to his
conduct, including proceeding past a red light and moving into the lane facing
oncoming traffic.

1.  Trooper Price 

            Trooper Price was in
charge of investigating the accident for DPS.  At his deposition, he was
questioned about the findings and conclusions in the report he submitted to
Sergeant Garrett.  In his report, Price found that Hallett:  (1) had a red
light as he came up to the intersection; (2) approached the intersection to the
left of the center lane, in the oncoming-traffic lane; (3) had his emergency
lights and siren activated; (4) proceeded into the intersection after stopping;
and (5) violated section 546.001 of the transportation code, which permits
proceeding past a red light “after slowing as necessary for safe operation.”  See
Tex. Transp. Code Ann. §
546.001.  In his deposition testimony, Price was asked the basis for his
conclusion that Hallett violated section 546.001.  Price responded, “[s]olely
the fact that another car hit him.”  Price stated that Hallett failed to
properly clear the intersection before entering, but declined to characterize
such conduct as “reckless.”  Price agreed that an officer has a responsibility
to refrain from entering an intersection against a traffic light until after he
has ensured that he can safely do so.  

2.  Sergeant Garrett 

            As the investigating
supervisor, Sergeant Garrett prepared a “counseling record” directed to
Hallett.  At his deposition, Garrett acknowledged that the report states that
Hallett “[f]ailed to exercise due caution during a pursuit by disregarding a
red light at an intersection . . . .”  Garrett’s report states, “Trooper
Hallett should not have entered the intersection until it was apparent that all
drivers were clear of his intentions and had yielded the right of way for safe
passage.”

3.  Alan Baxter

            Baxter gave
deposition testimony that in his opinion, Hallett “did not proceed safely”
through the intersection.  He also stated that when Hallett entered the
intersection against the light, he exhibited “reckless disregard” and
“conscious indifference” for the safety of others.  

C.  Analysis

            Sparks contends that
the evidence establishes, or at least raises a fact issue, regarding whether
Hallett acted recklessly or in conscious disregard of a high degree of risk of
harm to others.  We disagree.

            DPS’s
undisputed evidence establishes that Trooper Hallett was responding to an
emergency call with his emergency lights and siren activated.[8] 
The video recording and the testimony of Troopers Hallett, Lee, and Dunaway
established that Hallett slowed or stopped as he reached the intersection. 
Hallett stated that he slowed almost to a stop and looked “left, right, and
across” before entering the intersection.  Lee stated that Hallett stopped at
the intersection and looked to the left before entering the intersection with
“due caution.”  Dunaway stated that Hallett slowed at the intersection and
entered “cautiously.”  This evidence is sufficient to demonstrate that Hallett
did not act with conscious indifference or reckless disregard for the safety of
the public.  See City of Pasadena v. Kuhn, 260 S.W.3d 93, 99–100 (Tex.
App.—Houston [1st Dist.] 2008, no pet.) (holding evidence did not establish
officer’s actions were taken with conscious indifference or reckless disregard
where evidence showed officer was responding to emergency, had activated his
emergency lights and siren, slowed down before proceeding through intersection,
and collided with vehicle); City of San Angelo Fire Dep’t v. Hudson, 179
S.W.3d 695, 701–02 (Tex. App.—Austin 2005, no pet.) (holding no evidence of
reckless disregard for safety of others when officer entered intersection
without stopping and witness did not hear brakes being applied); Smith, 126
S.W.3d at 545–46 (holding evidence insufficient to establish recklessness when
ambulance driven to emergency with lights and sirens activated as it approached
intersection, other drivers at intersection could hear and see sirens and
lights, ambulance driver slowed down, looked, and then proceeded into
intersection without coming to complete stop).  We hold that DPS has
demonstrated that Hallett complied with applicable statutes.  See Tex. Transp. Code Ann. § 546.005; see
also Hudson, 179 S.W.3d at 701 (holding firefighter not reckless as a
matter of law under emergency response exception where siren and lights were
activated, driver slowed down and looked in both directions as reached the
intersection); Smith, 126 S.W.3d at 545–46 (holding ambulance driver not
reckless as a matter of law under emergency response exception where evidence
showed lights and siren were activated, driver slowed and looked at
intersection and observed drivers yielding to ambulance, and proceeded into intersection
without coming to complete stop).  Therefore, DPS met its burden to establish
lack of subject matter jurisdiction.  See Martin, 971 S.W.2d at 430. 

            Because
DPS alleged and introduced evidence that the trial court lacked subject matter
jurisdiction, the burden shifted to Sparks to raise a genuine issue of material
fact on whether Hallett acted with conscious indifference to or reckless
disregard for the safety of others.  See Tex. Civ. Prac. & Rem. Code Ann. § 101.055(2); Miranda,
133 S.W.3d at 227-28; Kuhn, 260 S.W.3d at 100; Hudson, 179 S.W.3d
at 701. 

            Sparks
points to Trooper Price’s conclusion that Hallett violated section 546.001 of
the transportation code by entering the intersection against a red light. 
However, Price also concluded that Hallett stopped before entering the
intersection and stated that the basis for his conclusion that Hallett violated
the statute was “[s]olely the fact that another car hit him.”  We disagree that
Price’s conclusion raises a genuine issue of material fact.  Price also found
that Hallett stopped before entering the intersection and specifically declined
to characterize Hallett’s conduct as “reckless.”  Section 546.001(2) provides
that an emergency vehicle operator responding to an emergency call is allowed to
proceed against a red traffic light after slowing for safe operation.  See Tex. Transp. Code Ann. § 546.001(2).  No
evidence was presented that Hallett failed to slow down or stop before entering
the intersection.  As noted, the video recording shows Hallett’s vehicle
slowing as it approaches the intersection.  We disagree with Price’s conclusion
that Hallett violated the statute simply because a collision occurred.  We hold
that Price’s conclusion is insufficient to raise a genuine issue of material fact
as to whether Hallett acted recklessly.  See Smith, 126 S.W.3d at 546
(holding evidence that officer entered the intersection against red light
insufficient to raise fact issue as to whether he acted recklessly); see
also City of Laredo v. Varela, No. 04-10-619-CV, 2011 Tex. App. LEXIS 3485,
at **8–14 (Tex. App.—San Antonio May 11, 2011, no pet.) (mem. op.) (holding
officer’s failure to adhere to policy requiring emergency vehicles to come to
complete stop and failure to remember looking both ways before entering
intersection did not raise fact issue as to whether officer acted in conscious
indifference to or reckless disregard for safety of others); City of
Arlington v. Barnes, No. 02-07-249-CV, 2008 Tex. App. LEXIS 2236, at **12–14
(Tex. App.—Fort Worth Mar. 27, 2008, pet. denied) (mem. op.) (holding that
written reprimand stating that officer “failed to exercise due care” and failed
to comply with section 546.005 were evidence that officer only acted
negligently and did not raise fact issue on reckless disregard). 

            Sparks
also cites Sergeant Garrett’s report that states that Hallett failed to
exercise due caution by disregarding the red light and that he should not have
entered the intersection until he was certain that other drivers had yielded
the right of way.  Again, we disagree that Garrett’s conclusion raises a
genuine issue of material fact as to whether Hallett acted recklessly. 
Garrett’s report also confirms that Hallett’s vehicle “slowed down” as it
approached the intersection.  When questioned at his deposition about the
counseling record stating that Hallett failed to exercise due caution, Garrett
responded that he did not believe Hallett needed to be counseled, but that he
was instructed to counsel Hallett by his supervisor, John Rodriguez.  No
evidence was presented, either in Garrett’s report or deposition testimony,
that Hallett failed to slow as necessary before entering the intersection or
otherwise acted with reckless disregard for the safety of others.  See
Hudson, 179 S.W.3d at 702 (holding witness’s statement that firefighter
entered intersection without stopping and witness did not hear brakes being
applied was not evidence of recklessness or conscious indifference); see
also Barnes, 2008 Tex. App. LEXIS 2236, at **12–14 (holding written
reprimand stating that officer failed to exercise due care and failed to comply
with transportation code did not raise fact issue on reckless disregard).  We
hold that Garrett’s statements are insufficient to raise a genuine issue of
material fact as to whether Hallett acted recklessly.  

            Finally,
Sparks cites Baxter’s deposition testimony that in his opinion, by entering the
intersection against the light, Hallett exhibited “reckless disregard” and
“conscious indifference” for the safety of others.  Again, we disagree that
Baxter’s conclusory statements raise a genuine issue of material fact as to
whether Hallett acted recklessly.  Baxter testified that it was “very
dangerous” for Hallett to enter the intersection in the oncoming-traffic lane
while Dunaway was in the far-right-hand lane because a driver’s attention would
be on Hallett’s vehicle and such an action “split[s] the visual plain [sic] for
oncoming traffic.”[9] 
Baxter described Hallett’s actions as follows:

Now, when he looked in that intersection
to see if it was clear, he looked to his left, but not when he was in the
intersection.  He looked to his left as they were approaching the intersection,
and that was a considerable different—or distance back from the intersection
proper.  He looked to his left, he checked that, then they proceeded into the
intersection; he didn’t stop.  I believe he’s not required to stop, but he’s
required to slow.  They slowed down the vehicle, and then without checking left
again he proceeded into the intersection in pursuit of the motorcycle, and
that’s when he was struck by Mr. Sparks.

 

Baxter’s testimony
confirms that as Hallett approached the intersection, he slowed down and looked
to his left.  Baxter offered no evidence regarding how far Hallett was from the
intersection when he looked left, and no evidence that Hallett was so far away
when he looked left that he was unable to determine whether he could proceed
safely through the intersection.[10] 
See Hudson, 179 S.W.3d at 702 (holding conclusory observation that fire
truck “slammed” into plaintiff’s car “full force” does not raise fact issue
about driver’s regard for the safety of others or whether he slowed as
necessary).  We hold that Baxter’s conclusory statements did not raise a
genuine issue of material fact as to whether Hallett acted recklessly.[11]

IV.  Conclusion

            The evidence
conclusively established that Sparks’s claim arises “from the action of an
employee while responding to an emergency call or reacting to an emergency
situation” and that the employee’s “action [was] in compliance with the laws
and ordinances applicable to emergency action . . . .”  See Tex. Civ. Prac. & Rem. Code Ann. §
101.055.  Consequently, the waiver of sovereign immunity in the Tort Claims Act
“does not apply,” id., and DPS retains its immunity from suit arising
from Hallett’s actions.  

            Accordingly,
we sustain DPS’s issue challenging the denial of its plea to the jurisdiction,
reverse the trial court’s order in appellate cause number 13-10-00401-CV
denying DPS’s plea to the jurisdiction, and render judgment dismissing Sparks’s
claims against DPS for lack of subject-matter jurisdiction.  Because we hold that the trial court
did not have subject matter jurisdiction, we need not address DPS’s challenges
to the denial of its motion for summary judgment, see Tex. R. App. P. 47.1, and also dismiss
appellate cause number 13-10-00402-CV for want of jurisdiction. 

                                                                                                

 

                                                                                                

DORI
CONTRERAS GARZA

                                                                                                Justice

 

Delivered and
filed the 

14th day of July,
2011.









[1]
In appellate cause number 13-10-00401-CV, DPS appeals the denial of its plea to
the jurisdiction, see Tex. Civ.
Prac. & Rem. Code Ann. § 51.014(a)(8) (West 2008), and in appellate
cause number 13-10-00402-CV, it appeals the denial of its motion for summary
judgment, see id. § 51.014(a)(5).


 





[2]
In its plea to the jurisdiction, DPS asserted only the second ground—that it
retains its sovereign immunity because of the statutory exception governing
emergency situations.  See id. §
101.055(2) (West 2011).  DPS makes the same argument in its motion for
summary judgment; the plea to the jurisdiction incorporates all of the summary
judgment evidence.





[3]
Maria Sparks, the wife of Robert Sparks, was a passenger in the van involved in
the collision.

 





[4]
Sparks’s response to DPS’s plea to the jurisdiction incorporated all arguments
and exhibits in his response to DPS’s motion for summary judgment. 





 

[5]
Hallett’s affidavit and report to Sergeant Garrett contain identical
information.  





[6]
Unless otherwise noted, all cited depositions were conducted by Sparks’s
counsel.

 





[7]
We have reviewed the video-recording of the pursuit taken from Trooper
Dunaway’s vehicle.  No video-recording was available from the vehicle driven by
Trooper Hallett.  The recording equipment was not functioning because it needed
a new tape inserted into the recorder.  





[8]
Sparks’s expert, Alan Baxter, agreed that when Trooper Hallett entered the
intersection, his emergency lights and siren were activated.  Sparks was
deposed by counsel for DPS.  Sparks testified that he did not have an
explanation for why he did not hear the siren or see the lights; he simply did
not.  He stated that there was “a lot of brush” and “high weeds” in the area
that may have obscured Hallett’s vehicle.  When asked whether Hallett had his
overhead lights activated when he entered the intersection, Sparks stated,
“[o]nly to the point what I could see when he entered the intersection.  I
didn’t see him any time before that.” 





[9]
Baxter provided no further explanation of the danger, other than that the
situation “actually catalyzed [sic] traffic in between there.”

 





[10]
We note that Baxter acknowledged that the video does not independently confirm
whether or when Hallett looked to the left. 





[11]
We also conclude that even if viewed as evidence of negligence, Baxter’s
statement that it was “very dangerous” for Hallett to enter the intersection in
the oncoming-traffic lane did not raise a genuine issue of material fact as to
whether Hallett acted recklessly.