

# Fourth Court of Appeals
## San Antonio, Texas

## CONCURRING OPINION

FILED IN
4th COURT OF APPEALS
SAN ANTONIO, TEXAS
07/2/2015 4:16:34 PM
KEITH E. HOTTLE
Clerk

No. 04-14-00275-CV

Adriana P. **PEREZ**,
Appellant

v.

**WEBB COUNTY**,
Appellee

From the 111th Judicial District Court, Webb County, Texas
Trial Court No. 2011CVT000305 D2
Honorable Monica Z. Notzon, Judge Presiding

Opinion by: Luz Elena D. Chapa, Justice
Concurring Opinion by: Marialyn Barnard, Justice
Dissenting Opinion by: Sandee Bryan Marion, Chief Justice

Sitting: Sandee Bryan Marion, Chief Justice
Marialyn Barnard, Justice
Luz Elena D. Chapa, Justice

Delivered and Filed: June 3, 2015

Although I agree we must reverse and remand this matter back to the trial court, I write separately because I do not believe Perez produced a scintilla of evidence to establish Officer Yzaguirre acted with conscious indifference or reckless disregard for the safety of others. Rather, I believe Perez produced some evidence that Officer Yzaguirre was not responding to an emergency call. Thus, I agree the trial court's judgment dismissing the case for lack of jurisdiction should be reversed and the matter remanded to the trial court for further proceedings.

**APPENDIX C**

## BACKGROUND

Officer Yzaguirre, a patrol supervisor and field supervisor, was on patrol when he heard a police dispatch report that a "domestic disturbance" was in progress approximately seven miles from his location. Although he was not officially dispatched to the scene, Officer Yzaguirre testified he responded because he knew the officer assigned to the area of the call was busy with another case and was several miles away from the location of the domestic disturbance. According to Officer Yzaguirre, domestic disturbance calls are classified as high priority due to the potential changing nature of domestic situations.

Officer Yzaguirre testified he activated his vehicle's overhead lights and headed in the direction of the domestic disturbance. As he approached the intersection of Chihuahua Street and Bartlett Avenue, the officer stated he used the vehicle's overhead lights and air horn to alert drivers to his presence so they could move out of the way. Admittedly, Officer Yzaguirre did not activate the vehicle's siren, which emits a constant sound, explaining the siren did not work when he sounded the air horn. According to the officer, each time he hit the air horn, the siren would shut off because the vehicle would not permit both the air horn and the siren to emit sounds at the same time. Thus, because he was constantly using the air horn to get through traffic, the siren was not emitting any sound. At the hearing, Officer Yzaguirre specifically stated, "It's called a Code 2. I was using my air horn faster than my siren was going. So it was constant on the air horn."

According to Officer Yzaguirre, when he approached the intersection immediately preceding the Chihuahua/Bartlett intersection, traffic was in the left lane, so he moved to the right lane, came to a complete stop, and then accelerated in order to pass traffic as he approached the Chihuahua/Bartlett intersection. The officer testified as he approached the Chihuahua/Bartlett intersection, he slowed down, looked left and right, and after seeing no vehicles and using his air horn and "due caution," proceeded through the intersection. As he was proceeding through the

intersection, Perez's blue SUV entered the intersection on the right — on the officer's blind side — and he struck the SUV on its rear panel.

Perez sued Webb County, arguing Officer Yzaguirre's conduct proximately caused her injuries. Webb County filed a plea to the jurisdiction, asserting it is entitled to governmental immunity pursuant to the "emergency exception" set forth in the Texas Tort Claims Act ("the TTCA"). The trial court granted Webb County's plea to the jurisdiction, dismissing Perez's suit. Perez then perfected this appeal.

## ANALYSIS

On appeal, Perez asserts the trial court erred in dismissing her suit because the "emergency exception" in section 101.055(2) of the Texas Tort Claims Act does not apply. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 101.055(2) (West 2011). Specifically, Perez claims Officer Yzaguirre was not on an "emergency call," and if he was, he did not comply with "laws and ordinances applicable to emergency action" as required by the emergency exception. *See id.* Perez also asserted Officer Yzaguirre's conduct involved an extreme degree of risk, and he had actual, subjective awareness of the risk his actions posed, "but he proceeded with conscious indifference to the rights, safety and welfare of others, including [Perez]." *See id.*

When, as here, a governmental body raises the "emergency exception," the plaintiff bears the burden of establishing the exception does not apply. *Quested v. City of Houston*, 440 S.W.3d 275, 284 (Tex. App.—Houston [14th Dist.] 2014, no pet.); *Tex. Dep't of Pub. Safety v. Little*, 259 S.W.3d 236, 238 (Tex. App.—Houston [14th Dist.] 2008, no pet.). However, Perez was only required to produce some evidence on any one of the following to raise a fact issue on immunity: (1) Officer Yzaguirre was not responding to an emergency call or reacting to an emergency situation; (2) Officer Yzaguirre did not act in compliance with the laws and ordinances applicable to the emergency situation; or (3) Officer Yzaguirre acted with conscious indifference or reckless

disregard for the safety of others. *See Quested*, 440 S.W.3d at 284; *Collins v. City of Houston*, No. 14-13-00533-CV, 2014 WL 3051231, at *7 (Tex. App—Houston [14th Dist.] July 3, 2014, no pet.) (mem. op.); *Little*, 259 S.W.3d at 238. The lead opinion authored by Justice Chapa holds Perez produced some evidence as to the third prong of the "emergency exception" — that Officer Yzaguirre "acted with reckless disregard for the safety of others, and that he knew or should have known his actions posed a high degree of risk of serious injury, but he did not care about the result." I respectfully disagree.

To raise a fact issue as to "reckless disregard," Perez was required to produce some evidence that Officer Yzaguirre knew his actions posed a high degree of risk of serious injury, *but he then proceeded with conscious indifference or reckless disregard of the risk posed. See City of Pasadena v. Kuhn*, 260 S.W.3d 93, 99 (Tex. App.—Houston [1st Dist.] 2008, no pet.) (citing *City of San Antonio v. Hartman*, 201 S.W.3d 667, 672 (Tex. 2006)); *Pakdimounivong v. City of Arlington*, 219 S.W.3d 401, 411-12 (Tex. App.—Fort Worth 2006, pet. denied). Although the officer may have known his actions posed a high degree of risk, there is no evidence he acted with conscious indifference or reckless disregard of the risk his actions posed.

Officer Yzaguirre testified that before he entered the Chihuahua/Bartlett intersection, he: (1) slowed down; (2) looked to his left and right; (3) activated his emergency lights; (4) used his air horn; and (5) proceeded with caution. Moreover, GPS evidence confirmed Officer Yzaguirre slowed to approximately sixteen miles per hour when he entered the intersection immediately preceding the Chihuahua/Bartlett intersection, and although he accelerated shortly thereafter, it is undisputed he applied his brakes before entering the intersection. The vehicle's computer system established the vehicle's overhead lights were on and the officer used the air horn three or four times as he approached the Chihuahua/Bartlett intersection. Admittedly, Officer Yzaguirre

- 4 -

testified that when he looked to his right, he recognized there was a blind spot, but decided to proceed through the intersection, albeit with caution.

It appears to me the lead opinion believes a material fact issue exists as to reckless disregard for the safety of others because Officer Yzaguirre: (1) knew there was a blind spot, but proceeded anyway; (2) accelerated as he was moving through the intersection; (3) had, "in the past, stopped for traffic failing to yield at an intersection as he attempted to drive through a red light," but did not in this case; and (4) "agreed he should brake as necessary if he had a blind spot blocking his view of oncoming traffic and had time to stop when driving through a red light." I believe, however, that the evidence relied upon in the lead opinion — coupled with the fact that the officer slowed down as necessary, used audible and visual signals to alert the public to his presence, looked both left and right before entering the intersection, applied his brakes as he approached the Chihuahua/Bartlett intersection, and in his own words "tried to show due caution to the public" as he approached the intersection — conclusively establishes Officer Yzaguirre did what he could under the circumstances to proceed with caution through an intersection he knew had a blind spot. *See Kuhn*, 260 S.W.3d at 100 (pointing out that officer slowing down before proceeding through an intersection but colliding with another vehicle is insufficient to show reckless conduct as a matter of law); *see also City of Laredo v. Varela*, No. 04-10-00619-CV, 2011 WL 1852439, at *4 (Tex. App.—San Antonio May 11, 2011, pet. denied) (mem. op.) ("The use of his siren, emergency lights and vehicle brakes are acts that indicate Officer Cortinas was aware of the dangers to other[s] as he responded to the emergency call and he was not consciously indifferent to the plight of other drivers."). In my opinion, the officer's testimony conclusively establishes he was cognizant of the risk of serious injury his actions posed to the public, but he used caution — checking primarily for pedestrians and other vehicles — while still trying to respond to the priority domestic violence call

in an expeditious manner. *See Varela*, 2011 WL 1852439, at *4; *Kuhn*, 260 S.W.3d at 100; *Pakdimounivong*, 219 S.W.3d at 411-12.

Admittedly, Officer Yzaguirre was traveling thirty-six miles per hour at the time of impact, yet this fact does not diminish the other actions he took in the interest of public safety, nor does it constitute evidence that his actions were taken with conscious indifference or reckless disregard for the safety of others. In my opinion, there is nothing in the record to suggest Officer Yzaguirre lacked concern regarding the potential result of his actions. *See Kuhn*, 260 S.W.3d at 100; *Pakdimounivong*, 219 S.W.3d at 411-12. In light of his speed at the time of impact and awareness of his blind spot, the evidence, at best, raises a fact issue as to whether Officer Yzaguirre acted negligently or had a "momentary judgment lapse." *See Kuhn*, 260 S.W.3d at 99. This is insufficient to raise a fact issue with regard to conscious indifference or reckless disregard.

I do believe, however, Perez produced some evidence as to the first prong of the "emergency exception" — that Officer Yzaguirre was *not* responding or reacting to an emergency call or situation. *See Quested*, 440 S.W.3d at 284; *Collins*, 2014 WL 3051231, at *7; *Little*, 259 S.W.3d at 238. Therefore, the trial court erred in granting the plea to the jurisdiction and dismissing Perez's suit.

Perez contends Officer Yzaguirre was not responding to an emergency because: (1) it is undisputed he was not dispatched to the scene; (2) the Standard Operating Procedures Manual ("SOPs") used by the Webb County Sheriff's Office does not characterize domestic disturbance or domestic violence calls as "emergency calls"; and (3) it is unclear whether the call was a Code 2 call or Code 3 call — or whether either a Code 2 call or Code 3 call is an "emergency."

I agree with Perez. In this case, Perez produced evidence Officer Yzaguirre was not dispatched to the domestic disturbance call, suggesting the call was not an emergency. *Cf. Collins*, 2014 WL 3051231, at *7 (stating plaintiff's evidence that dispatcher did not characterize call as

emergency raised fact issue as to whether call was emergency.). Moreover, Officer Yzaguirre admitted the SOPs do not specifically list a "domestic disturbance" or "domestic violence" call[1] as an "emergency call." The SOPs do, however, include "assault in progress with weapons involved" as an "emergency," but Officer Yzaguirre admitted he was *assuming* a weapon might be involved; he was not advised that a weapon was involved. Furthermore, there is no evidence Office Yzaguirre requested assistance, which by his own admission, would usually be requested if the call was an emergency.

Additionally, Perez presented evidence that Officer Yzaguirre was not using his siren when he responded to the call. She suggests this undisputed fact shows the call was a Code 2 call, and therefore not an emergency because according to the SOPs, a Code 3 call mandates the use of red and blue emergency lights and *sirens*. According to Officer Yzaguirre, officers responding to a Code 2 call use their overhead lights with either the siren *or* air horn, and officers responding to a Code 3 use "pretty much everything that the car can give you." This testimony suggests a Code 3 call is a higher priority call — perhaps rising to the level of an emergency, whereas a Code 2 call is a lower priority call — perhaps not rising to the level of an emergency. The evidence on this is less than clear, which I believe in itself raises a fact issue.

Obviously, however, the difference between a Code 2 call and a Code 3 call is the use of equipment. Officer Yzaguirre admitted he was using his overhead lights and air horn only, which is some evidence of a non-emergency, i.e., a Code 2 call. Moreover, Officer Yzaguirre admitted when he responded to the call he "was running a Code 2" contrary to his previous testimony to the Accident Review Board where he characterized the call as a Code 3 call.

---

[1] In his testimony, Officer Yzaguirre interchangeably referred to the call as a "domestic disturbance" and "domestic violence" call.

Thus, when the evidence is considered in the light most favorable to Perez, I contend she produced some evidence, sufficient to create a fact issue, as to whether Office Yzaguirre was responding to an emergency call. Therefore, I agree with the conclusion in the lead opinion that the trial court's judgment should be reversed and the matter remanded to the trial court. Accordingly, I concur in the judgment.

Marialyn Barnard, Justice