**Opinion issued June 16, 2022**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-19-00629-CV

————————————

**ELMER RIVERA, KASSANDRA MORALES RODRIGUEZ, AND ISREAL MORALES, Appellants**

**V.**

**CITY OF HOUSTON, Appellee**

**On Appeal from the 270th District Court**
**Harris County, Texas**
**Trial Court Case No. 2018-87546**

## MEMORANDUM OPINION[1]

---

[1] Our opinion issued on December 22, 2020. The City moved for panel rehearing. We deny the motion for rehearing. We withdraw our December 22 opinion and issue this in its stead. This new opinion has two parts. The first part is the December 22 opinion without any substantive changes to the text. The second part includes additional, expanded analysis and a response to the matters raised in the motion for rehearing.

This appeal arises from a car accident and centers on whether a City of Houston police officer held official immunity when she drove her police vehicle through an intersection—having no idea that she had a red light—on her way to pick up a co-worker because she planned, after that, to stop by a police event to which she had neither been assigned nor instructed to go. The City argued she had official immunity, and the trial court granted the City's summary-judgment motion, ruling that the City established its affirmative defense.

In four issues, the other vehicle's driver, Elmer Rivera, and his passengers, Kassandra Morales Rodriguez and Israel Morales, (collectively, Rivera) contend that (1) they raised a genuine issue of material fact to defeat the City's summary-judgment motion on immunity, (2–3) the trial court abused its discretion on two evidentiary rulings related to the parties' summary-judgment evidence, and (4) the trial court abused its discretion in denying their motion to continue the summary-judgment hearing, given that they did not get the chance to depose the two officers whose affidavits the City relied on in support of its summary-judgment motion. As explained below, we conclude that Rivera raised a fact issue on the officer's official immunity, which requires a reversal unless the ruling was correct on other grounds.

The City argues it was. It contends that the summary judgment should have been granted on its alternative theory that the emergency exception to

2

governmental-immunity waiver applied and the trial court erred when it denied the summary-judgment motion on that separate ground. Because the trial court did not err in denying summary judgment on that ground, we overrule the City's sole appellate issue.

We reverse.

## Background

At around midnight, Officer V. Romero was driving outside of her regular patrol area on her way to the Beechnut Station to pick up her partner. After picking up her partner, she planned to go to a non-emergency priority-three call on an auto theft. While on her way to the Beechnut Station, she heard a radio announcement of an emergency priority-two call involving a suspect with a weapon. At the time, Officer Romero was 10 to 15 minutes from that location, which was in her regular patrol area. Officer Romero was not assigned to the priority-two call. She was not asked to back that call up either.

Priority-two calls are emergency calls. The standard response to such a call, according to Lieutenant C. Chen, who supervises patrol officers, is to "run silent without emergency lights and siren" with a response time of "under five minutes." But if the situation "clearly warrants" the use of emergency equipment (meaning lights and a siren), then an officer has the discretion to use that mode.

3

Even through Officer Romero was 10 or more minutes away, had not been assigned to the call, and planned to pick up her partner before doing anything else, Officer Romero decided to "check by" the priority-two call after going to the Beechnut Station. At that point, before getting to the Beechnut Station, she engaged her emergency equipment as she drove to pick up her partner.

Recognizing that the law permits police officers who are responding to an emergency to violate certain traffic laws,[2] Officer Romero reached the first intersection after turning on her emergency equipment, noted that her light was red, "came to a complete stop to ensure the intersection was clear," saw that the other vehicles were yielding her the right of way even though she had the red light, and drove through that intersection.

She quickly approached the next intersection. There, she slowed down as she approached the intersection but did not stop. As she was typing a message to the dispatcher on her mobile data terminal (MDT) device about checking by the priority-two call later, she entered that intersection. Officer Romero later admitted she had no idea whether her light was red or green when she entered the intersection typing on her MDT. As she entered the intersection, her police car struck another car that was traveling along the intersecting roadway. The

---

[2]    *See* TEX. TRANSP. CODE § 545.151(a)(1)(A) (requiring a motorist to stop at an official traffic-control device); *id.* § 546.001(2) (authorizing police officers to "proceed past a red or stop signal or stop sign, after slowing as necessary for safe operation").

undisputed summary-judgment evidence is that Officer Romero, in fact, had a red light, even though she was not aware she did, and that the other driver, Elmer Rivera, had a green light.

In December 2018, Rivera and his passengers sued Officer Romero and the City of Houston for damages for injuries suffered in the wreck. The next month, the City answered and moved to dismiss Officer Romero from the suit under the Texas Tort Claims Act, leaving just the City as the defendant. The motion was fully briefed by both sides and set for hearing in February 2019. The trial court granted the motion that month.

Two months later, the City filed a motion for summary judgment on two immunity grounds: (1) official immunity for Officer Romero's actions and (2) the emergency exception to the Tort Claims Act's governmental-immunity waiver provision. *See* TEX. CIV. PRAC. & REM. CODE § 101.021(1) (official immunity); *id.* § 101.055(2) (emergency exception). In support of its motion, the City attached the affidavits of Officer Romero and her supervisor, Lieutenant Chen. The motion was set for May 2019.

Rivera responded in several ways. First, he moved to compel the City to respond to pending discovery requests and to strike various objections the City had raised to them. That motion was set to be heard in May 2019. Second, he filed a verified motion to continue the summary-judgment hearing, arguing that discovery

5

was not complete and depositions still needed to be taken. Officer Romero had not been deposed yet because the City had not given any dates for her availability. Also, the case had not been set for trial. Third, he noticed Officer Romero's deposition for May 28, 2019.

Before the May 28 deposition date, the trial court denied Rivera's motion to continue the summary-judgment hearing and granted the City's summary-judgment motion.

## Governmental Immunity

### A. Standard of Review

Governmental immunity protects political subdivisions of the State, including municipalities, from suit, unless immunity from suit has been waived. *Gen. Servs. Comm'n v. Little-Tex Insulation Co.*, 39 S.W.3d 591, 594 (Tex. 2001). When a governmental unit raises the affirmative defense of governmental immunity through a summary-judgment motion, it must establish the affirmative defense as a matter of law. *See* TEX. R. CIV. P. 166a(c); *Oakbend Med. Ctr. v. Martinez*, 515 S.W.3d 536, 542 (Tex. App.—Houston [14th Dist.] 2017, no pet.).

If the movant conclusively establishes the affirmative defense of immunity, the burden of production shifts to the nonmovant to present evidence sufficient to create a fact issue on at least one element of either the movant's affirmative defense or an exception to that defense. *Oakbend*, 515 S.W.3d at 542; *Zeifman v.*

*Nowlin*, 322 S.W.3d 804, 808 (Tex. App.—Austin 2010, no pet.). If the movant cannot and suit is barred because of a governmental unit's immunity, summary judgment is proper. *Oakbend*, 515 S.W.3d at 542; *See Shives v. State*, 743 S.W.2d 714, 715 (Tex. App.—El Paso 1987, writ denied) ("[A] motion for summary judgment may be based on a showing that the cause of action is barred as a matter of law by the affirmative defense of governmental immunity."); *cf. Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226–28 (Tex. 2004) (standard of review for jurisdictional plea based on evidence generally mirrors traditional summary judgment standard).

**B.      Whether the City established immunity as matter of law based on good-faith performance of a discretionary act**

Rivera sued the City for the actions of its employee, Officer Romero, in causing the car wreck and resulting injuries. Political subdivisions, including municipalities, cannot be held liable for the actions of their employees unless a constitutional provision or statute waives governmental immunity. *Little-Tex Insulation*, 39 S.W.3d at 594. The Texas Tort Claims Act waives governmental immunity in certain circumstances. *Dallas Cnty. Mental Health Mental Retardation v. Bossley*, 968 S.W.2d 339, 342–43 (Tex. 1998). One of those involves injuries that result from the governmental employee's use of a vehicle. Section 101.021 of the Act waives a governmental unit's immunity for, among other things, property damage and personal injuries proximately caused by the

negligence of an employee acting within her scope of employment if (1) the damage and injuries arise from the operation or use of a motor vehicle and (2) the "employee would be personally liable to the claimant according to Texas law." TEX. CIV. PRAC. & REM. CODE § 101.021(1).

The second half of the waiver criteria implicates official immunity because a governmental employee who holds official immunity for her actions or omissions would not be "personally liable under Texas law." *See DeWitt v. Harris Cnty.*, 904 S.W.2d 650, 653 (Tex. 1995) ("If the employee is protected from liability by official immunity, the employee is not personally liable to the claimant and the government retains its sovereign immunity" under § 101.021(1)); *see also Mem'l Villages Police Dep't v. Gustafson*, No. 01-10-00973-CV, 2011 WL 3612309, at *3 (Tex. App.—Houston [1st Dist.] Aug. 18, 2011, no pet.) (mem. op.). "A governmental employee is entitled to official immunity: (1) for the performance of discretionary duties; (2) within the scope of the employee's authority; (3) provided the employee acts in good faith." *Univ. of Houston v. Clark*, 38 S.W.3d 578, 580 (Tex. 2000); *see City of Lancaster v. Chambers*, 883 S.W.2d 650, 654 (Tex. 1994).

## 1.   Discretionary duty

Generally, nonemergency driving by a police officer while on official business is not a discretionary duty; it is, instead, a ministerial act that does not entitle an officer to official immunity. *City of Houston v. Hatton*, No. 01-11-

8

01068-CV, 2012 WL 3528003, at *3 (Tex. App.—Houston [1st Dist.] Aug. 16, 2012, pet. denied) (mem. op.); *Harris Cnty. v. Gibbons*, 150 S.W.3d 877, 886 (Tex. App.—Houston [14th Dist.] 2004, no pet.). But, when the officer's operation of a vehicle involves personal deliberation or the exercise of the officer's professional expertise, decision, or judgment, then the manner of driving may become a discretionary act. *Hatton*, 2012 WL 3528003, at *3. For example, an officer's manner of driving, including violating certain traffic laws, when the officer is trying to quickly reach the scene of suspected criminal activity and assist another officer has been held to be a discretionary act. *See Harless v. Niles*, 100 S.W.3d 390, 398 (Tex. App.—San Antonio 2002, no pet.).

### 2.    Good faith

If the officer's driving qualifies as the performance of a discretionary act, the officer still must act in good faith to qualify for official immunity. *See Clark*, 38 S.W.3d at 580. We measure the "good faith" requirement against a standard of objective legal reasonableness, without regard to the officer's subjective state of mind. *Wadewitz v. Montgomery*, 951 S.W.2d 464, 466 (Tex. 1997).

Because official immunity is part of the City's affirmative defense of governmental immunity raised in its motion for summary judgment, the City had the burden to prove that a reasonably prudent police officer, under the same or similar circumstances, "could have believed his actions were justified based on the

information he possessed at the time." *Gomez v. City of Houston*, 587 S.W.3d 891, 897 (Tex. App.—Houston [14th Dist.] 2019, pet. denied) (citing *Telthorster v. Tennell*, 92 S.W.3d 457, 465 (Tex. 2002)).

This "could have believed" evaluation does not raise a question of unreasonableness. Rather, it is a test of good faith analogous to an abuse-of-discretion standard that protects "all but the plainly incompetent or those who knowingly violate the law." *Id.* (quoting *Texas Dep't of Pub. Safety v. Bonilla*, 481 S.W.3d 640, 643 (Tex. 2015) (per curiam) (internal quotation marks omitted)). In other words, the City need not prove it would have been unreasonable not to take the actions that Officer Romero took or that a reasonable officer would have taken the same actions as her; instead, it is enough to prove that a reasonable officer under the same or similar circumstances *might* have reached the same decision she did. *Id.*; *Tex. Dep't of Pub. Safety v. Rodriguez*, 344 S.W.3d 483, 491 (Tex. App.—Houston [1st Dist.] 2011, no pet.).

The evaluation of good faith compares the need to act against the risks of the officer's actions based on the facts at the time. *Wadewitz*, 951 S.W.2d at 467. Need, in the context of an emergency response, is evaluated based on factors such as (1) the seriousness of the crime or accident the officer is responding to, (2) the need for the officer's immediate presence to prevent injury or loss of life or to

apprehend a suspect, and (3) the availability of alternative courses of action, if any, to achieve a comparable result. *Id.*

Risk evaluates countervailing public-safety concerns by examining (1) the nature and severity of harm that the officer's actions could cause, including injuries to bystanders as well as the possibility that a vehicle accident might prevent the officer from reaching the scene of the emergency that drew the action, (2) the likelihood that harm would occur, and (3) whether any risk of harm would be clear to a reasonably prudent officer based on the officer's perception of the facts at the time. *See id.*; *Gomez*, 587 S.W.3d at 898.

If the City meets this "good faith" summary-judgment burden, then, to raise a fact issue to defeat summary judgment, Rivera must offer evidence that *no* reasonable officer in Romero's position *could have* believed that the facts justified her conduct. *Gomez*, 587 S.W.3d at 898.

### 3. The City did not establish these elements conclusively

In support of its summary-judgment motion and to conclusively establish official immunity, the City relies on the affidavits of Officer Romero and Lieutenant C. Chen, who was Officer Romero's supervisor on the day of the wreck. The City argues that these affidavits establish that Officer Romero was performing a discretionary act and acting in good faith at the time of the wreck. In doing so, the City focuses on the fact that Officer Romero had engaged her

11

emergency equipment consistent with responding to an emergency because Officer Romero intended to "check by" the priority-two call after picking up her partner. And the City focuses on Officer Romero's explanation that it was reasonable for her to type on her MDT as she drove through the intersection where the collision occurred because she wanted to let the radio operator know that she intended to check by the priority-two call and her "preference is to enter that information into the MDT, rather than reporting via the radio to leave the air open in case the officer needs assistance." Her supervisor agreed that her actions were reasonable.

But other evidence called into question the reasonableness of these actions. First, Lieutenant Chen claimed that the standard response to a priority-two call is to "run silent without emergency light and siren" but an officer "has discretion to use that mode" if the situation "clearly warrants the use of emergency equipment." There is no summary-judgment evidence that this situation warranted emergency equipment. While Officer Romero claimed that typically "two units respond" to such a call "unless the primary unit is a two-man unit," making her decision to check by the unassigned call align with police department practices, there is no summary judgment evidence that the unit assigned to the call was a one-man unit for which another unit would be warranted. This is thus no evidence that the standard practice for this call was for her unit to go as well. Moreover, Lieutenant Chen claimed that the standard response to a priority-two call is "under five

12

minutes." Officer Romero, who was not assigned to the call, claimed that she was 10-15 minutes away and still planned to pick up her partner before going to the call.

Even if we were to assume that

—the City established that Officer Romero's decision to "check by" a call that was more than 10 minutes away, with no evidence the call met the criteria for her unit's participation, and for which she had not been assigned to appear was a discretionary act,

—the City established that choosing to check by a priority-two call that was not within 5 minutes of her location and to use emergency equipment to do so—even though Officer Romero was 10-15 minutes away and planned to go pick up her partner from the Beechnut Station before going there—was "clearly warrant[ed]," and

—the City established that Officer Romero's actions in typing on her MDT while driving through an intersection against a red light could be considered a good faith action,

we still must conclude that no reasonable officer could have concluded it was reasonable to do these things without first confirming that the light was green or, at a minimum, having some idea whether it was red.

Neither of the affidavits the City relies on addresses or acknowledges what the summary-judgment evidence establishes: Officer Romero entered the intersection having no idea whether she had a red light or green light. Rivera submitted the Texas Peace Officer's Crash Report for the wreck as summary-judgment evidence. The report contains the verbatim text of Officer Romero's

13

written statement, which included the concession: "I didn't realize I had the red light at the intersection at S. Braeswood."

That Officer Romero did not know the status of the traffic light as she entered an intersection is dispositive: it is not objectively reasonable to drive into an intersection, while actively typing on a machine, without having any idea that the traffic light controlling traffic from that direction was red, meaning there could be cross-traffic entering the intersection on a green light. Because Officer Romero did not know whether she had a red light when she entered that intersection typing on her MDT, she could not properly evaluate the risks of her actions against any need to check by the priority-two call, thereby taking her actions outside the realm of a good-faith performance of a discretionary act. *See Jarpe v. City of Lubbock*, No. 07-17-00316-CV, 2019 WL 2529670, at *5–6 (Tex. App.—Amarillo June 19, 2019, pet. denied) (mem. op.) (rendering judgment against City on immunity claim, concluding no reasonably prudent officer could have determined it reasonable to speed to a call to which the officer was not assigned, at night, without emergency equipment activated, and while looking down at the MDT instead of the road and other vehicles in the vicinity); *Gomez*, 587 S.W.3d at 899 (holding that city failed to establish good faith where affidavits discussed good faith under assumed facts and provided no evidence of good faith under version of facts most favorable to nonmovant); *Rodriguez*, 344 S.W.3d at 497 (concluding

14

officer and lieutenant's affidavits did not establish good faith in driving through red light).

Because Rivera raised a fact issue on official immunity,[3] we sustain Rivera's first issue.

## C. The evidentiary rulings and the continuance ruling are moot

In his remaining three issues, Rivera challenges two evidentiary rulings on the summary-judgment evidence and another ruling to deny a continuance of the summary-judgment hearing. We conclude that all three of these issues are mooted by our holding that the trial court erred in granting the summary-judgment motion, which returns this case to the trial court's docket for additional proceedings and evidentiary development.

## D. Whether the City established immunity as matter of law based on emergency exception to immunity waiver

The City contends that, even if the trial court erred in granting it summary judgment on official immunity arising out of a good-faith performance of a discretionary act, the summary judgment may still be upheld on the alternative

---

[3] The City argues that Rivera is unable to raise a fact issue without expert evidence, citing *Wadewitz v. Montgomery*, 951 S.W.2d 464, 466–67 (Tex. 1997), and *Harris County v. Avila*, No. 14-18-00182-CV, 2019 WL 1030332, at \*6 (Tex. App.— Houston [14th Dist.] Mar. 5, 2019, no pet.) (mem. op.). Neither case supports the City's position. Neither case addresses whether, much less holds that, expert testimony is required to raise a fact issue on official immunity. *See Wadewitz*, 951 S.W.3d at 467 (concluding that the expert testimony offered on the subject of good faith was conclusory and therefore no evidence); *Avila*, 2019 WL 1030332, at \*7 (stating that Avila "failed to present any controverting proof," not simply expert opinion testimony).

theory that the emergency exception to immunity waiver applies here. The trial court explicitly rejected this argument, and we do as well.

Under the emergency exception, the Texas Tort Claims Act's immunity waiver will not apply to a claim arising from "the action of an employee while responding to an emergency call or reacting to an emergency situation if [1] the action is in compliance with the laws and ordinances applicable to emergency action, or in the absence of such a law or ordinance, if [2] the action is not taken with conscious indifference or reckless disregard for the safety of others . . . ." TEX. CIV. PRAC. & REM. CODE § 101.055(2).

The laws on operating an emergency vehicle are in the Transportation Code. *See* TEX. TRANSP. CODE §§ 546.001–.006; *Perez v. Webb County*, 511 S.W.3d 233, 236 (Tex. App.—San Antonio 2015, pet. denied). Section 546.005 provides that an emergency-vehicle driver must drive "with appropriate regard for the safety of all persons" and is not relieved of the "consequences of reckless disregard for the safety of others." *Id.* § 546.005. A person commits the offense of reckless driving if "the person drives a vehicle in willful or wanton disregard for the safety of persons or property." *Id.* § 545.401(a). A violation of this provision requires a showing that the driver committed an act he knew or should have known posed a high degree of risk of serious injury. *City of Pasadena v. Kuhn*, 260 S.W.3d 93, 99 (Tex. App.—Houston [1st Dist.] 2008, no pet.); *Perez*, 511 S.W.3d at 236. This is

a recklessness standard. *See City of San Antonio v. Hartman*, 201 S.W.3d 667, 672 n.19 (Tex. 2006) ("conscious indifference" and "reckless disregard" have been interpreted to require proof that a party knew the relevant facts but did not care about the result).

An operator approaching an intersection "shall stop, yield, and grant immediate use of the intersection . . . in obedience to an official traffic-control device." TEX. TRANSP. CODE § 545.151(a)(1)(A). It is permissible for an authorized emergency vehicle to "proceed past a red [light] after slowing as necessary for safe operation." *Id.* § 546.001(2).

The City points to Officer Romero's affidavit in which she states she slowed down before entering the intersection where the wreck occurred. But the statute requires more than that she slow down: it requires "slowing as necessary for safe operation" through the intersection. *See id.*

Here, Officer Romero slowed her vehicle, but she did not look to see if she had a red light to evaluate the risk of proceeding through the intersection. In fact, she had no idea if she had the right of way or if other traffic did, yet she proceeded through the intersection looking—not at the road, but—at her MDT.

Rivera raised an issue of fact about whether Officer Romero acted with reckless disregard for him and other drivers in the area by failing to observe,

17

appreciate, or weigh the risk of entering this intersection against a red light and with her eyes diverted. *See Perez*, 511 S.W.3d at 237.

This Court's holding in *Kuhn* is distinguishable. There, an officer was responding to a house-fire emergency. *Kuhn*, 260 S.W.3d at 95. He activated his emergency lights and approached an intersection. *Id.* at 98. He recognized he had a red light, he slowed down or possibly stopped and evaluated whether the intersection appeared clear to cross, and he entered the intersection. *Id.* at 99–100. There was a blind spot at that intersection, the officer did not see another car coming, and the two collided in the intersection. *Id.* This Court held that there was no evidence of reckless disregard because the officer slowed as necessary and the existence of a blind spot was not determinative. *See id.* at 100–01.

Here, on the other hand, Officer Romero entered the intersection having failed to determine whether she had a red light and she did so while distracted by typing on her MDT. She slowed her vehicle, but she did not slow to the degree necessary to evaluate whether she was traveling against a red light and, based on that information, to evaluate the risks of proceeding through the intersection while typing on her MDT.

The City did not establish a right to summary judgment on the emergency exception on this evidence, and the trial court was correct to deny the motion on this ground.

We overrule the City's sole issue.

## Conclusion

We reverse and remand for additional proceedings.

Panel consists of Justices Keyes, Lloyd, and Landau. Memorandum opinion authored by Justice Sarah Beth Landau.

## OPINION ON REHEARING

In our original opinion, we stated that, even assuming certain facts favorable to the City were true, the City still failed to establish immunity as a matter of law. We took this approach because the two affidavits the City relied on for summary judgment failed to adequately address a material fact established by the summary-judgment evidence: that Officer Romero entered the intersection where the crash occurred without knowing whether the traffic signal was red or green. That fact must weigh into the need versus risk assessment required in a good-faith analysis, yet neither affidavit weighed that material fact in concluding that a reasonable officer could have believed that the need to arrive quickly outweighed the risk associated with this officer's conduct. We expand our analysis here to make additional points and one correction.

### A. Expanded analysis on good faith

A governmental entity must conclusively establish that a reasonably prudent officer in the same or similar situation could have believed the need to which the

19

officer is responding outweighs the risks associated with the officer's action to obtain summary judgment based on good faith in a police-response situation. *Wadewitz v. Montgomery*, 951 S.W.2d 464, 466–67 (Tex. 1997). The need half of the balancing test assesses the urgency of the circumstances to which the officer is responding, including the seriousness of the situation, whether the officer's immediate presence is necessary to prevent injury or loss of life or to apprehend a suspect, and whether any other courses of action exist. *Id.* at 467. An officer must assess the specific circumstances present that affect the risks involved. *Harris Cnty. v. Smyly*, 130 S.W.3d 330, 335 (Tex. App.—Houston [14th Dist.] 2004, no pet.). When a governmental entity's supporting affidavit ignores the extent to which alternative actions might have affected the officer's ability to respond timely to a disturbance call, the affidavit fails to adequately assess risk to conclusively prove good faith. *City of Brazoria v. Ellis*, No. 14-14-00322-CV, 2015 WL 3424732, at *5 (Tex. App.—Houston [14th Dist.] May 28, 2015, no pet.) (mem. op.). Here, neither affidavit assessed the risks involved in entering an intersection unaware of the color of the traffic light. Neither affidavit addressed the extent to which alternative actions—like pausing typing or slowing until able to look up to check the traffic light's color—might have affected Officer Romero's ability to respond timely to the call, particularly given that she was making a stop at the police station en route anyway.

In our original opinion, we stated that summary-judgment evidence that Officer Romero did not know the traffic light's color was dispositive. We clarify here that it is dispositive in that it is a material fact that neither affidavit that the City relies on incorporates into its risk assessment. Affidavits are required to assess the specific circumstances present that affect risk. *Smyly*, 130 S.W.3d at 335. "Summary-judgment proof does not provide a 'suitable basis' for determining good faith if it fails to address several factors we have identified as bearing on the need/risk analysis, including the availability of any alternative action." *Tex. Dep't of Pub. Safety v. Bonilla*, 481 S.W.3d 640, 644 (Tex. 2015) (per curiam). The evidence submitted by the City in support of its motion failed to address whether Officer Romero had any available alternatives—such as looking up to see the light color and then incorporating that information into her assessment of the risk of entering that intersection under those conditions—or whether such alternatives would have been viable given the circumstances. *See Gomez v. City of Houston*, 587 S.W.3d 891, 897–98 (Tex. App.—Houston [14th Dist.] 2019, pet. denied). The City did not conclusively establish good faith because it did not assess risk in light of the uncontroverted, material facts and weigh those facts in determining whether an alternative course of action was available instead of entering an intersection without knowing the light color and while typing on a device.

21

The City's evidence of good faith is also inconclusive for a second, independent reason: it assumes the truth of the disputed fact that Officer Romero engaged her emergency lights and siren before and while entering the intersection. The police report contains verbatim statements from three people in the car that collided with Officer Romero. Elmer Rivera stated that Officer Romero used her emergency lights "half way." Kassandra Rodriguez stated that it was "halfway" when "the cops lights turn on." Israel Morales stated he saw the police lights when "she put it at the last minute."

An opinion that an officer acted in good faith does not conclusively establish good faith when the opinion is reached "by assuming the truth of disputed facts." *Green v. Alford*, 274 S.W.3d 5, 20 (Tex. App.—Houston [14th Dist.] 2008, pet. denied) (en banc). The affidavits the City relies on assumes Officer Romero had her emergency equipment engaged continuously as she approached and entered the intersection. But there was other evidence in the record that she did not have the emergency equipment engaged before entering this second intersection. The three people in the other car stated that Officer Romero turned them on halfway through the intersection at the last minute. Neither of the City's affiants formed their good-faith opinions based on a need versus risk analysis under the alternative scenario that Officer Romero had not engaged her emergency siren until halfway through the intersection. Because they did not, and there is evidence in the record that she

22

turned on the siren late, the City has not conclusively demonstrated that Officer Romero acted in good faith. *Ellis*, 2015 WL 3424732, at *6; *Smyly*, 130 S.W.3d at 335 ("When material facts underlying an officer's claim of good faith are contradicted, a conclusive finding of good faith is precluded and summary judgment is improper.").

Because the evidence does not reflect that Officer Romero considered alternative actions and because the City's evidence of good faith assumes the truth of disputed facts, we reaffirm our conclusion that the City did not conclusively establish that Officer Romero acted in good faith. *Gomez*, 587 S.W.3d at 897–901. Accordingly, the burden never shifted to Rivera to produce controverting evidence to rebut Officer Romero's good faith. And the trial court erred in granting the City's motion for summary judgment on official immunity's good-faith grounds.

## B. Correction

In our original opinion we described the crash by saying that Officer Romero's "police car struck another car that was traveling along the intersecting roadway." The City argues on rehearing that the other car struck Officer Romero's. Indeed, the crash report identifies "Unit 1" as Rivera and "Unit 2" as Officer Romero and states that "Unit 1 had the green light. Unit 2 failed to use due caution and was using the MDT police computer. Unit 1 (FD) struck Unit 2 (RP)." Thus,

we amend our opinion to state that Rivera's vehicle struck Officer Romero's vehicle.

Additionally, our original opinion indicated that Officer Romero's affidavit made no mention of the fact that she did not know the color of her traffic light. The City is correct that there is a short phrase in Romero's affidavit that states she did not know she had a red light. But our analysis remains the same. The reason the City's affidavits did not support summary judgment was not that the officers failed to acknowledge she had not known the traffic light's color. It was that neither affidavit incorporated that material fact into the need versus risk assessment that is required to posit that a reasonable officer might have believed the officer's actions were appropriate. *See Ellis*, 2015 WL 3424732, at *5–6 (summary judgment on immunity is improper when government entity attempts to establish good faith by assuming truth of disputed facts or fails to consider uncontroverted facts). Officer Romero said she did not know the traffic light's color, but she did not incorporate that material fact into her need versus risk assessment. Neither did Lieutenant Chen. *See Smyly*, 130 S.W.3d at 334–35 (to establish good faith as a matter of law, the affidavits relied on by the government entity must base their need-risk assessment on facts in light most favorable to the nonmovant and must address all evidence in the record that is material to the good-faith determination).

We amend our opinion to make these two corrections but conclude that neither affects our analysis.

## C. Additional response to the City's motion for rehearing

The City lodges three additional criticisms of our original opinion that we address here.

### 1. Color of traffic light

First, the City contends that we reversed on a ground not expressly presented to the trial court. According to the City, Rivera never highlighted to the trial court that Officer Romero had not known the traffic light color when she entered the intersection. This omission, under the City's theory, prevents this Court, on appeal, from allowing that record fact to drive our analysis. We disagree that Rivera's alternate focus requires an affirmance for two reasons.

The law requires an appellant to have raised with the trial court the issue on which it seeks to rely on appeal. TEX. R. CIV. P. 166a(c). Here, the City was the movant, and Rivera was the nonmovant. The City had the burden to conclusively establish good faith to obtain summary judgment. *Wadewitz*, 951 S.W.2d at 466–67. "A summary judgment may be based on uncontroverted testimonial evidence of an interested witness ... if the evidence is," among other things, "free from contradictions and inconsistencies." TEX. R. CIV. P. 166a(c). Rivera's response challenged the risk assessment in Officer Romero's affidavit and noted that the

summary-judgment evidence supported an alternative factual theory that Officer Romero had turned on her emergency equipment "at the time she realized she had run a red light and was in the middle of an intersection"—meaning she did not know she had a red light when she entered the intersection. Attached to Rivera's summary-judgment response was a crash report that contained this statement by Romero: "I didn't realize I had the red light at the intersection at S. Braeswood." The City's own evidence included the same fact because Officer Romero's affidavit likewise stated: "I did not realize I had the red light at the intersection of S. Braeswood." The matter of entering the intersection unaware of the light color was raised in the summary-judgment proceeding, even if it was not the center of Rivera's argument. That Rivera chose not to highlight the fact does not preclude its relevance in our de novo review of the grant of summary judgment on immunity grounds. This simply is not a waived issue.

Regardless, we have concluded that the affidavits were insufficient to support summary judgment because they assumed the truth of disputed facts—that Officer Romero's emergency equipment was engaged before and while entering the intersection. The extent to which Rivera focused on Officer Romero's knowledge of the traffic light's color played no role in our conclusion that summary judgment was improper because the City's affidavits impermissibly assumed a disputed fact in the movant's favor. Thus, there is an independent basis

26

for reversing summary judgment unrelated to the color of the traffic light and whether Rivera focused on it in his summary-judgment response.

### 2. Negligence standard

Next, the City contends we reduced the good-faith evaluation to a negligence standard by seeming to conclude that Officer Romero could not have appropriately "proceed[ed] past a red [light] after slowing as necessary for safe operation" if she did not know the color of her light as she entered the intersection. TEX. TRANSP. CODE § 546.001(2). According to the City, Officer Romero's "knowledge of the light's color" should have been "immaterial" to our analysis so long as there was evidence that she slowed her vehicle; otherwise, we are impermissibly evaluating whether she was negligent.

We disagree that our discussion of this Transportation Code provision reduced the evaluation to a negligence standard. The statute requires an officer to slow "as necessary for safe operation." *Id.* The issue is not that Officer Romero failed to slow enough or that her failure to slow might be negligent. It is that she could not have assessed the risks involved in proceeding through the intersection without also knowing the light color because whether she faced a red or green light affected the risk assessment of proceeding. *See Smyly*, 130 S.W.3d at 335.

Until cross-traffic became aware of Officer Romero's presence, those drivers presumably would have stopped if they had a red light or would have

27

continued through the intersection if they had a green light. The likelihood cross-traffic would have crossed the intersection at the same time Officer Romero crossed the same intersection was impacted by the color of the traffic light from each direction. This makes Officer Romero's lack of knowledge of the light's color a material fact that affected the risk assessment. Yet, neither of the affidavits the City relied on incorporated that record fact into their risk assessment in concluding that a reasonable officer might have determined that the need outweighed the risks. It is not that Officer Romero failed to slow enough to be safe. It is that a risk assessment must include the material fact that she had a red light and proceeded through the intersection without that knowledge. Neither affidavit on which the City relied accounted for that material fact in their risk assessments.

### 3. Emergency exception

Finally, the City contends there is no genuine issue of material fact that Officer Romero was responding to an emergency and that her actions were not reckless, and, therefore, the City was entitled to summary judgment on immunity under its alternative theory that the emergency exception applied. TEX. CIV. PRAC. & REM. CODE § 101.055(2). The City cites to multiple cases that state the undefined term "emergency" should be read broadly and to the affidavits it supplied in support of its summary-judgment motion that referred to the priority-two call Officer Romero says she was responding to as an emergency.

But the cases the City cites are distinguishable. In each, the officer was going directly to the location of a call that, in most cases, involved a dangerous situation that might have resulted in injuries or loss of life. *See, e.g.*, *Quested v. City of Houston*, 440 S.W.3d 275, 284–85 (Tex. App.—Houston [14th Dist.] 2014, no pet.) (officer received emergency call from SWAT commander who ordered officer to immediately report to scene of armed hostage situation). Here, Officer Romero planned to "check by" a call assigned to a different officer but only after driving to the police station to pick up her partner. The undisputed evidence in this case, as confirmed by Officer Romero's own affidavit, is that Officer Romero heard a dispatch about a priority-two call, she was not assigned to the call, she was not in the assigned area of the call, and she was more than five minutes from the location, even though Lieutenant Chen testified that a priority-two call has a standard response time of less than five minutes.

Before hearing the call, Officer Romero was on her way to the police station to pick up her partner. Nothing about the content or seriousness of the call caused her to alter her course. It only affected what she would do after picking up her partner. The wreck happened on the way to the police station before Officer Romero picked up her partner.

The summary-judgment evidence raises a fact issue whether the underlying facts constitute an emergency as contemplated in Section 101.055(2). According to

Lieutenant Chen—in the affidavit the City was relying on for summary judgment—priority-two responders should arrive in less than five minutes. Officer Romero was more than five minutes away and planned to make a stop en route.

We have not found any "emergency exception" cases involving a stop en route to a call location, much less cases where the officer who stopped en route was never assigned to the call to begin with. At a minimum, there is a fact question whether this qualifies as a response to an emergency call under Section 101.055(2) to take Officer Romero's actions outside the waiver of immunity for emergency responses. *See City of Coll. Station v. Kahlden*, No. 10-12-00262-CV, 2014 WL 1269026, at *5 (Tex. App.—Waco Mar. 27, 2014, pet. denied) (mem. op.) (defining "emergency," in context of Section 101.055(2), as "an unforeseen combination of circumstances or the resulting state that calls for immediate action" (internal quotations omitted)); *Jefferson Cnty. v. Hudson*, No. 09-11-00168-CV, 2011 WL 3925724, at *3 (Tex. App.—Beaumont Aug. 25, 2011, no pet.) (mem. op.) (defining "emergency" as used in section 101.055(2) to "refer[ ] to unforeseen circumstances that call for immediate action" (internal quotations omitted)).

The fact question precludes summary judgment on this alternative theory.

## Conclusion

The City's motion for rehearing is denied. We reverse and remand for additional proceedings.

Sarah Beth Landau
Justice

Panel on rehearing consists of Justices Landau, Hightower, and Rivas-Molloy.